Harper SIBLEY, Jr., Plaintiff-Appellant, Cross Appellee,

v.

TANDY CORPORATION et al., Defendants,

Tandy Corporation, Defendant-Appellee, Cross Appellant.

No. 75–1243.

United States Court of Appeals, Fifth Circuit.

Dec. 3, 1976.

Rehearing Denied Feb. 18, 1977.

Robert L. Blumenthal, Rod Phelan, Earl F. Hale, Jr., Dallas, Tex., for plaintiff-appellant, cross appellee.

Warren W. Shipman, III, Donald H. Ray, Charles L. Stephens, Cecil E. Munn, Sloan B. Blair, Fort Worth, Tex., for Tandy Corp.

R. F. Snakard, Fort Worth, Tex., for Ft. Worth Nat'l Bank.

Before GEWIN, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

This case originates from a corporate merger agreement containing a provision for arbitration of differences arising from the agreement. Differences arose between the parties to the agreement, and one party sued asserting breach of contract claims, federal and state securities law claims, and common law fraud claims. We hold that the district court erred in refusing to require arbitration of the contract claims and to stay the securities and fraud claims pending arbitration.

The merger agreement was between Tandy Corporation and P. J. Parker, Inc., a holding company. Parker's primary asset was ownership of Hickok Manufacturing Company. Hickok and Parker were experiencing serious financial difficulties. The management of Parker began negotiating with the Tandy management with the object of merging Parker into a specially-formed Tandy subsidiary. After several months of intense negotiations, Tandy and Parker entered into a written agreement calling for a statutory merger between Parker and a newly created Tandy subsidiary.

Parker shareholders were to be paid in Tandy stock, two thirds upon surrender of the Parker shares and the remaining third to be held by Fort Worth National Bank as escrow agent pending verification of Parker's representation of its net worth. Tandy was to obtain an audit by its accountants to confirm the Parker net worth. The audit and all other accounting matters were to "be handled in accordance with generally accepted accounting principles applied on a basis consistent with those applied with respect to the certified consolidated financial statements of Parker as of December 31, 1970." The agreement provided for arbitration of all disputes arising from the agreement.

According to the audit by Tandy's accountants, Parker's net worth was substantially less than represented. The primary reasons for the difference in figures were: (a) a write-down of $331,492 in the value of Hickok's inventory; (b) a charge of $93,721 against Parker's net worth, incurred as a result of Tandy's cancellation of a computer software contract held by Parker; (c) the inclusion of a liability of $486,016 for the cost of a single premium life and medical insurance policy to cover insurance benefits allegedly owed by Hickok to retired employees; and (d) the inclusion of a liability of $65,000 for accrued management vacation pay. After receiving the audit Tandy ordered the bank to impound the escrowed stock.

Harper Sibley, the person designated in the agreement as the representative of Parker shareholders, brought suit against Tandy. (For convenience we refer to the plaintiff as "Parker.") The original complaint was in six counts, characterized by the district court in this manner:

Plaintiff's complaint may be analysed as follows: (1) Count IV alleges a violation of rule 10b–5 of section 10b of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b) (1970); (2) Counts I, II, III, V and VI allege claims grounded in the contract of merger relating to defaults on the part of defendants or reformation of the merger agreement.[1]

By a timely motion Tandy moved to have the contract claims submitted to arbitration and to have the federal securities law claims stayed pending arbitration. The parties and the district judge recognized that under § 29 of the Act, 15 U.S.C. § 78cc (1970), Count IV was not subject to arbitration. *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The court declined, however, to sever the contract counts and to submit them to arbitration, on the ground that they were so intertwined with the securities law claim that submitting them to arbitration would violate § 78cc, saying:

> This is especially true when one considers that Counts I, II, III, V and VI involve intricate questions of law and findings of fact that when rendered, would likely resolve the issues presented in Count IV.

Trial was held in October 1974 and consumed 14 days, 22 witnesses and more than 100 documentary exhibits. The jury verdict consisted of answers to special interrogatories consisting of 34 specific questions.[2] The bulk of the interrogatories related to matters of accounting, i. e., the application of "generally accepted accounting procedures" and the interpretation of corporate financial statements, with particular reference to the four areas of primary controversy—valuation of inventory and inclusion as liabilities of a charge for cancellation of a computer software contract, life insurance premiums, and vacation pay. These were the areas from which arose the differences in valuation of Parker's net worth as represented by it and as reflected by Tandy's audit. Several interrogatories related to pre-agreement representations made by Tandy concerning accounting principles and the treatment of the four specific accounting items in particular controversy.

The court entered judgment awarding $463,853.93 damages to Parker plus delivery of the escrowed shares. Parker appealed on the issue of damages. Tandy cross-appealed on the issues of liability and the refusal to submit to arbitration. We hold that the court erred when it denied Tandy's motion to submit the contract claims to arbitration and refused to stay the securities fraud claims pending the outcome of that arbitration. We, therefore, reach neither the issue of Tandy's liability nor the issue of damages.

■ We find no merit in plaintiff's contention that Tandy waived its right to arbitration. The burden on one seeking to prove a waiver of arbitration is a heavy one. *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924 (CA5, 1970); *Hilti, Inc. v. Oldach*, 392 F.2d 368 (CA1, 1968). The plaintiff has failed to carry this burden. Tandy filed its motion to stay the very day it filed its answer to Parker's complaint, and it took no actions which could be viewed as being inconsistent with its right of arbitration. Tandy did not waive its right by failing to press an interlocutory appeal of the district judge's denial of its motion to stay arbitration. *General Guaranty, supra.*

■ The present case squarely raises the problem of what a court should do where arbitrable claims are joined with claims not subject to arbitration. On the one hand, Section Two of the United States Arbitration Act, 9 U.S.C. § 2, makes arbitration clauses in contracts involving commerce "valid, irrevocable and enforceable." Parker's contract claims against Tandy fall

---

1. Perhaps, more accurately, there were four contract counts, one federal and one state securities law count, and one common law fraudulent misrepresentation count.

2. There was no general verdict.

within the ambit of the arbitration clause of their agreement, and are thus arbitrable. Their subject matter is peculiarly adapted to arbitration. On the other hand, claims under the Federal Securities Acts, such as Parker's 10b–5 claim, are generally not subject to arbitration under a preexisting arbitration clause. *Wilko v. Swan, supra*; *Newman v. Shearson, Hammill & Co., Inc.*, 383 F.Supp. 265 (W.D.Tex.1974).[3]

Here, the district judge ordered all issues tried on the ground that the arbitrable issues were inextricably intertwined with the federally cognizable 10b–5 issues. We agree with the district judge that when it is impractical if not impossible to separate out non-arbitrable federal securities law claims from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over the federal securities act claims. *Shapiro v. Jaslow*, 320 F.Supp. 598 (S.D.N.Y.1970). However, in this case, the claims were not "intertwined" in the legal sense. Instead we view the 10b–5 claim as being "dependent" upon the contract claims. The difference is subtle yet significant. A comparison of the claims in *Shapiro v. Jaslow, supra*, with Parker's claims illustrates the difference. In *Shapiro*, one of the defendants alleged in a cross-complaint that one of his codefendants committed acts giving rise to rights under both the common law (arbitrable) and under the federal securities law (non-arbitrable). The two claims in *Shapiro*

were not factually severable. An arbitrator making a decision on the common law claims would have been impelled to review the same facts needed to establish the plaintiff's securities law claim.[4]

Parker's suit against Tandy is a horse of a distinctly different color. The original complaint, the amended complaint (filed a year after arbitration was denied), the record of the trial, the numerous special interrogatories submitted to the jury, and the opinion of the court rendered in entering judgment on the jury findings, reveal this to be essentially a dispute over corporate valuations centered around complex issues of accounting and valuation. The securities law claim was the rather small tail to a much larger dog.

An even more important consideration is seen when Parker's claims made in the original complaint are arranged in the sequence that logic commands. First is the "front-line" assertion, a plain vanilla suit for what amounts to specific performance of a contract which, according to Parker, unambiguously means what Parker says it means. Parker asserts that under such a contract it has performed (or perhaps is excused from further performance), and that Tandy has failed to perform because its accountants did not properly value inventory, did not use proper accounting methods in valuing inventory, improperly handled the three liability items (computer contract, life insurance and vacation pay), and did not unqual-

---

**3.** While there is language in *Sherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974), which suggests a colorable argument that the doctrine of *Wilko v. Swan, supra*, does not apply to actions brought under the 1934 Securities Exchange Act, we adhere to the view that the similarities between the 1933 Securities Act and the 1934 Exchange Act far outweigh any differences which might exist, and that the widely held view that *Wilko* is applicable to both the 1933 and 1934 Acts is still correct. *See, e. g., Moran v. Paine, Webber, Jackson-Curtis*, 389 F.2d 242, 245 (CA3, 1960); *Colonial Realty Corp. v. Bache & Co.*, 358 F.2d 178, 183 n. 5 (CA2, 1964); *Starkman v. Seroussi*, 377 F.Supp. 518 (S.D.N.Y.1974).

**4.** For another securities case where arbitration was denied because the arbitrator and court would have to deal with the same facts *see*

*Stockwell v. Reynolds & Co.*, 252 F.Supp. 215 (S.D.N.Y.1965).

While we hold that the logic of decisions such as *Shapiro, supra*, and *Stockwell, supra*, has no application to the relationship between the plaintiff's federal securities and contract claims, we recognize that the reasoning in those cases applies to the relationship between the plaintiff's federal securities law claims and his state securities law claims and common law fraud claims. If an arbitrator were to resolve the plaintiff's Texas securities law and common law fraud complaints, he would be dealing with the same facts which form the basis for plaintiff's claim of federal securities law violations. Therefore, we hold that plaintiff's claims under the Texas securities laws, like his claims under the federal securities laws, are not arbitrable.

ifiedly certify their audit. Tandy having breached, Parker asks that the escrowed shares be delivered to it.

Parker's first fall-back claim is that the contract may be ambiguous. If it is, then resort must be had to oral representations made by Tandy. This extrinsic matter will resolve ambiguities in Parker's favor, or will require reformation of the contract because it does not exemplify the "true understanding" between the parties. Under the contract, either construed or reformed as Parker desires, Parker is entitled to win because Tandy breached that contract.

Up to this point, Parker's claims are seen as pure claims on the contract involving the terms of the merger agreement (as written, or as construed or reformed) and the application of those terms. If either of these positions by Parker were sustained before an arbitrator the controversy would be entirely or largely at an end except for the arbitrator's making adjustments in the valuation figures if appropriate. Thereafter Parker could hardly contend in a courtroom that Tandy's representations had fraudulently induced it to enter into a written contract which: (1) meant what Parker said it meant, that is, was consistent with Parker's contentions, or (2) embodied in it the oral representations made by Tandy and thereby set out the correct understanding between the two parties. Tandy's representations are irrelevant with respect to (1) or are incorporated into the contract under (2) as part of the "true agreement" between Parker and Tandy.

■ Parker's second fall-back position is that its management was fraudulently in-

duced by the oral representations of Tandy management to enter into a written contract which *differed* from the previously-made oral representations. Here the securities claim arises. The very existence of this claim is predicated upon Parker's first two positions being resolved *against* Parker. Unquestionably, the facts are to some degree intertwined and overlapping. But all of the policy reasons supporting arbitration apply here where arbitration may establish that a securities claim does not exist because the claimant's own assertions with respect to arbitrable issues are correct.[5] The parties, by their agreement, committed the resolution of contractual disputes to arbitration. Both the policy behind the United States Arbitration Act and considerations of judicial economy required that Parker's contractual claims be submitted to arbitration and that the federal securities law claims be stayed pending the outcome of those proceedings. Cf. *Kavit v. A. L. Stamm & Co.*, 491 F.2d 1176 (CA2, 1974); *Black v. Econo-Car Int'l, Inc.*, 404 F.Supp. 600 (D.Mass.1974); *Harman Electrical Construction Co. v. Consolidated Engineering Co.*, 347 F.Supp. 392 (D.Del.1972).[6]

We reverse and remand with directions that plaintiff's claims, other than those alleging violations of federal and state securities laws, and common law fraud claims be submitted to arbitration in accordance with the parties' agreement, and that resolution of the Texas and federal securities law claims and common law fraud claims be stayed pending the outcome of the arbitration proceedings.

REVERSED and REMANDED with directions.

---

**5.** Plaintiff itself has recognized that its securities law claim cannot exist unless the contractual dispute between it and Tandy is resolved in the latter's favor. In the plaintiff's original complaint its federal securities law count is phrased as follows:

"Alternatively, if the Merger Agreement is found unambiguous . . . then Tandy . . . employed a device scheme or artifice to defraud."

**6.** Dependency is a two-way street, i. e., there exist situations where the arbitration should be stayed pending resolution of the securities law

claims. For a case illustrating a situation where the arbitrable claims should be stayed see *Frier Industries, Inc. v. Glickman*, [1974–1975 Decisions] Fed.Sec.L.Rep. ¶ 94,845 (S.D. N.Y.1974). Moreover, if the claims are factually and legally independent, the court may allow both the arbitration proceedings and the trial of the securities law claims to go forward simultaneously. E. g., *Macchiavelli v. Shearson, Hammill & Co., Inc.*, 384 F.Supp. 21, 31 (E.D.Cal. 1974). See also *Sam Reisenfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679 (CA5, 1976).