SMOKY GREENHAW COTTON CO.,
INC., Plaintiff-Appellant,

v.

MERRILL LYNCH PIERCE FENNER &
SMITH, INC. and Charles D. Scott,
Defendants-Appellees.

No. 83-1143.

United States Court of Appeals,
Fifth Circuit.

Dec. 16, 1983.

David Greenhaw, William R. Holman, Dallas, Tex., for plaintiff-appellant.

James P. Boldrick, Midland, Tex., for defendants-appellees.

Before REAVLEY, RANDALL and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

■ This dispute between the Smoky Greenhaw Cotton Company, a West Texas cotton broker, and its brokerage house, Merrill Lynch Pierce Fenner & Smith, Inc., brings to us review of a district court order staying legal proceedings pending arbitration.[1] Because Greenhaw's complaint included claims of security act violations intertwined with claims under the Commodity Exchange Act and other arbitrable claims, we vacate the stay.

I

In December, 1980, Smoky Greenhaw opened two separate trading accounts with Merrill Lynch, one to trade in securities and the other a non-discretionary commodities trading account. These two accounts were managed by broker Charles Scott, a Merrill Lynch employee.

Greenhaw sued Scott and Merrill Lynch in September, 1982, charging that Scott had fraudulently used funds from Greenhaw's securities account for unauthorized trading in Greenhaw's commodities account. The complaint purported to state a claim under the Securities Exchange Act of 1934,[2] the Commodity Exchange Act,[3] and various Texas statutory and common law doctrines.

Merrill Lynch answered and moved for a stay pending arbitration. The request for stay was predicated on the Arbitration

---

1. We have appellate jurisdiction under 28 U.S.C. § 1292(a)(1) because the stay of legal proceedings pending arbitration satisfies the appealability requirements of the *Enelow-Ettelson* rule. *See Jackson Brewing Co. v. Clarke*, 303 F.2d 844, 845 (5th Cir.1962).

2. 15 U.S.C. § 78a *et seq.*

3. 7 U.S.C. § 1 *et seq.*

Act[4] and an arbitration agreement signed by Greenhaw when the commodities account was opened. Over Greenhaw's objection the district court granted the motion for stay pending arbitration, and Greenhaw brings this interlocutory appeal.

## II

■ The Securities Exchange Act claims are not arbitrable. Noting the concern of Congress for the protection of individuals trading in the securities market, the Supreme Court held in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), that access to the federal courts cannot be barred by an earlier agreement to arbitrate. Arbitration agreements, voluntarily entered into by traders, which purported to waive their right to sue in federal court when disputes developed between them and their brokers are unenforceable. The general policy favoring arbitration, as expressed in the Arbitration Act, is outweighed by the particular need to preserve the legal remedies otherwise available to traders in the securities market. Later cases found *Wilko* applicable to claims arising under the Securities Exchange Act of 1934 as well as to claims arising under the Securities Act of 1933. *Sawyer v. Raymond, James & Associates, Inc.,* 642 F.2d 791, 792 (5th Cir.1981); *Sibley v. Tandy Corp.,* 543 F.2d 540, 543 n. 3 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).

The finding that securities claims are not proper subjects for arbitration made problematical complaints with both non-arbitrable securities claims and otherwise-arbitrable claims arising under some other statute or common law precept. We faced this "intertwining" issue in *Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976), holding that "when it is impractical if not impossible to separate out non-arbitrable federal securities law claims from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over the federal securities act claims." *Id.* at 543.

*Sibley* is the exception that proves the rule, for we there held that the securities law claims and contract claims were not intertwined in a manner justifying a denial of arbitration of the contract claims. An arbitrator in that case would not have been likely to resolve the federal securities act claims in the course of resolving the contract claims. Rather, it would have been necessary to decide two arguments based on contract principles before a third argument based on securities law would have been reached.

■ Here Greenhaw charges that Merrill Lynch used money from Greenhaw's securities account to trade without authority in Greenhaw's commodities account. An arbitrator trying to determine whether improper commodity trading had in fact been conducted, would likely go many steps toward determining also whether there was illicit use of Greenhaw's securities account, regardless of whether the arbitrator ultimately found for Greenhaw or for Merrill Lynch. In short, the Securities Exchange Act claims here, unlike in *Sibley,* are intertwined with the non-securities claims. *See also Miley v. Oppenheimer & Co., Inc.,* 637 F.2d 318 (5th Cir.1981) (further refining the "intertwining" concept.)

Because the securities and commodities claims are intertwined, Greenhaw correctly urged that the district court should not have stayed the suit pending arbitration. Merrill Lynch responds that, even if the claims were intertwined, by ordering arbitration the district court has implicitly dismissed Greenhaw's Securities Exchange Act claims on the merits. Merrill Lynch urges that such a disposition would be justified because the securities claims allege fraud but fail to plead it with the particularity required by Fed.R.Civ.P. 9(b).

We will not consider whether dismissal of Greenhaw's claims might have been justified. The fact is that the district court did not grant a motion to dismiss and we are not prepared to "suppose" that it did.

4. 9 U.S.C. § 1 *et seq.*

## III

Greenhaw argues that for three reasons a stay is not available to Merrill Lynch even if the Securities Exchange Act claim is dismissed. We choose to reach this argument in an effort to save judicial resources. The district court may face these arguments on remand and they have been fully argued on this appeal.

### a.

■ Greenhaw first urges us to extend the principle of *Wilko v. Swan* to cases arising under the Commodity Exchange Act. Such a course has been followed by at least two district courts, but not by any circuit court.

In *Milani v. ContiCommodity Services, Inc.*, 462 F.Supp. 405 (N.D.Cal.1976), the court concluded that the rationale underlying the Supreme Court's *Wilko* holding was equally applicable in the commodity trading context. Investors in commodities—no less than investors in securities—must have recourse to the courts if they are not to be routinely taken advantage of by more sophisticated but less scrupulous players. Consequently, arbitration is not available to defendants in actions brought under the Commodity Exchange Act, and arbitration agreements between commodities investors and their brokers are ineffective. *Accord, Breyer v. First Nat'l Monetary Corp.*, 548 F.Supp. 955 (D.N.J.1982); *cf. Bache Halsey Stuart, Inc. v. French*, 425 F.Supp. 1231 (D.D.C.1977) (holding that arbitration will not be ordered where the aggrieved customer is prosecuting a reparations action before the Commodity Futures Trading Commission).

This reasoning is not persuasive. Though superficially similar in many respects, the securities market and the commodities market have different histories and functions. We will not pause to detail these differences. It is sufficient to note that the policies that might impel Congress to establish a particular rule for the securities trad-ing industry may find little parallel in the commodities trading industry.

The more forceful argument against extending the *Wilko* rule to commodities cases is that it would require a judicial policy decision that Congress has not made. We must recollect that the Supreme Court in *Wilko* was not giving effect to its own determination that securities traders required special protections; rather it was effectuating a Congressional determination that had been embodied—implicitly at least—in the Securities Acts. The Commodity Exchange Act, by contrast, emphasizes extra-judicial resolution of disputes,[5] and does not generally lead us to conclude that Congress meant to rule out arbitration as a dispute resolution mechanism in cases arising under that act.

We find support for this reading of congressional intent in the regulations promulgated by the Commodity Futures Trading Commission. The Commission has sanctioned arbitration and issued regulations calculated to protect a customer from an unknowing agreement to arbitrate.[6] We are unable to find a congressional signal that arbitration ought not be available in Commodity Exchange Act cases where the parties have previously entered into a valid arbitration agreement.

A number of other courts have rejected extension of the *Wilko* principle to cases arising under the Commodity Exchange Act. For example, *Ingbar v. Drexel Burnham Lambert, Inc.*, 683 F.2d 603 (1st Cir. 1982), points out that *Milani* was decided before the CFTC amended its regulations so as to provide greater protection to individuals entering into voluntary agreements to submit disputes with brokers to arbitration. The *Ingbar* court believed that at least two other circuits had implicitly also upheld arbitration of Commodity Exchange Act claims. *See Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216 (6th Cir.1980), *aff'd on other matters*, 456

---

**5.** In particular, 7 U.S.C. § 18 provides for reparations proceedings before the Commodity Futures Trading Commission—a remedy without parallel under the securities acts.

**6.** See note 8 *infra*.

U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982); *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174 (2d Cir. 1977). More explicit affirmations of the right to arbitration are found in *Salcer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 682 F.2d 459 (3d Cir.1982); *Tamari v. Bache & Co. (Lebanon) S.A.L.,* 565 F.2d 1194 (7th Cir.1977), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); and *Romnes v. Bache & Co., Inc.,* 439 F.Supp. 833 (W.D. Wisc.1977). *See also Marley v. Drexel Burnham Lambert, Inc.,* 566 F.Supp. 333 (N.D.Tex.1983) (confirming an arbitration award resulting from arbitration proceedings which transpired after stay of both federal and state court actions).

### b.

■ Greenhaw next asserts that even if arbitration is generally permissible in cases such as this one, it should be denied here because Merrill Lynch was in default when it moved for the stay pending arbitration. The default charged by Greenhaw has two aspects: first, Merrill Lynch did not file a timely answer to the complaint, and second, the motion for a stay was not filed until more than seven weeks had passed from the filing of the answer. The district court did not consider either aspect sufficient to justify denying Merrill Lynch arbitration. It did not deem Merrill Lynch to be in "default" as that term is used in the Arbitration Act.[7] The term "default" is not specifically defined in the Act and sounds largely

in the discretion of district courts. With either aspect we recognize the superior opportunity of the district judge to determine when a party ought to be defaulted from pursuing arbitration. Such a finding will not be overturned by us as clearly erroneous, *see Howard Hill, Inc. v. George A. Fuller Co.,* 473 F.2d 217 (5th Cir.1973), absent a greater showing of prejudice than Greenhaw has here made.

### c.

■ Finally, Greenhaw argues that it was induced by fraudulent means to sign the agreement respecting arbitration of disputes; the argument is spurious. Greenhaw asserts that Merrill Lynch marked with an "X" the line on which Greenhaw was to sign this agreement, thus preventing Greenhaw from discovering that the arbitration agreement was voluntary and was not a condition of opening a commodity account with Merrill Lynch.

Since 1976, CFTC regulations have required all arbitration agreements to feature in block letters a notice that the agreement is entered into by the customer purely on a voluntary basis. 17 C.F.R. § 180.3.[8] Any agreement not containing this notice is void. *Id.* The agreement signed by Greenhaw contained the requisite notice[9] just above the line for the customer's signature. If Greenhaw signed the arbitration agreement without reading it, that careless act does not make the agreement any less bind-

---

**7.** 9 U.S.C. § 3 provides that a stay pending arbitration shall be granted "providing the applicant for the stay is not in default in proceeding with such arbitration."

**8.** The language recommended by 17 C.F.R. § 180.3(b)(4) is as follows:

WHILE THE COMMODITY FUTURES TRADING COMMISSION (CFTC) RECOGNIZES THE BENEFITS OF SETTLING DISPUTES BY ARBITRATION, IT REQUIRES THAT YOUR CONSENT TO SUCH AN AGREEMENT BE VOLUNTARY. YOU NEED NOT SIGN THIS AGREEMENT TO OPEN AN ACCOUNT WITH [name]. See 17 CFR 180.1–180.6.

BY SIGNING THIS AGREEMENT, YOU MAY BE WAIVING YOUR RIGHT TO SUE IN A COURT OF LAW, BUT YOU ARE NOT WAIVING YOUR RIGHT TO ELECT AT A

LATER DATE TO PROCEED PURSUANT TO SECTION 14 OF THE COMMODITY EXCHANGE ACT TO SEEK DAMAGES SUSTAINED AS A RESULT OF A VIOLATION OF THE ACT. IN THE EVENT A DISPUTE ARISES, YOU WILL BE NOTIFIED IF [name] INTENDS TO SUBMIT THE DISPUTE TO ARBITRATION. IF YOU BELIEVE A VIOLATION OF THE COMMODITY EXCHANGE ACT IS INVOLVED AND IF YOU PREFER TO REQUEST A SECTION 14 "REPARATIONS" PROCEEDING BEFORE THE CFTC, YOU WILL STILL HAVE 45 DAYS IN WHICH TO MAKE THAT ELECTION.

**9.** But for a few insubstantial alterations, the notice provision in the Merrill Lynch contract precisely tracked the language recommended by the CFTC. *See* note 8, *supra.*

ing. Merrill Lynch's act of placing an "X" next to the place where the customer was to sign does not rise to the level of coercive conduct required to invalidate a contract. The district court was not required to hold an evidentiary hearing before concluding that this claim lacked any merit.

## IV

We have concluded that claims arising under the Commodity Exchange Act are proper subjects for arbitration, and that the district court did not err in deciding that Merrill Lynch is not to be denied arbitration by reason of default or fraud in the inducement of the arbitration agreement. However, if the Securities Exchange Act claims are not dismissed [10] arbitration is not available for any of Greenhaw's claims.

For the reasons previously stated, the stay of legal proceedings pending arbitration is VACATED and the case is REMANDED for further proceedings. AFFIRMED in part and REMANDED.

---

**10.** We express no opinion as to whether Greenhaw's Securities Exchange Act claims are stated in sufficient detail or whether they will survive a motion for summary judgment.