**Pasqualina BUSTAMANTE, Plaintiff,**

**v.**

**ROTAN MOSLE, INC., and Michael J. Westpheling, Defendants.**

**Civ. A. No. H–84–3517.**

United States District Court,
S.D. Texas,
Houston Division.

April 1, 1986.

J. Eugene Clements, Porter & Clements, Houston, Tex., for plaintiff.

Richard L. Josephson, Baker & Botts, Houston, Tex., for defendants.

### MEMORANDUM AND ORDER

SINGLETON, Chief Justice.

The matter currently before this Court in the above captioned case is defendants' Motion to Compel Arbitration. This case is one of alleged securities fraud, and the complaint is composed of four counts; the first arising under Rule 10b–5 of the Securities Exchange Act of 1934, the second

arising under section 12(2) of the Securities Act of 1933, the third arising under Section 33 of the Texas Blue Sky Law and the fourth arising under the Texas common law of fiduciary relationships. The defendants move to compel arbitration of the 10b–5 claim, the Blue Sky claim and the common law claim. Defendants made their motion in May of 1985, shortly after the March decision of the Supreme Court in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). The determination of Defendants' motion depends to some extent upon the interpretation of *Dean Witter Reynolds.*

### A. Alleged Facts

In September of 1981, plaintiff Pasqualina Bustamante opened an account with defendant Rotan Mosle. Defendant Michael Westpheling, an agent of Rotan, was plaintiff's stockbroker. At this time, plaintiff executed an agreement that contained an arbitration clause. This clause provided that any controversy between Plaintiff and Defendant arising out of or related to their agreement would be settled by arbitration.

At the time Plaintiff opened her account, she allegedly advised defendant Westpheling that she would prefer a conservative investment of her funds in "blue chip" stocks, and that her objectives were safety, moderate growth of capital and a steady income. Contrary to these instructions, plaintiff alleges, defendant Westpheling purchased highly speculative securities on plaintiff's behalf, including investments in real estate and drilling rig ventures.

Plaintiff also alleges that defendant Westpheling "churned" her account to generate high commissions for himself. Plaintiff alleges that defendant Westpheling engaged in over 200 transactions in a two and one half year period and that such a great number of transactions was not commensurate with plaintiff's objectives of safety, steady income and moderate growth. Plaintiff also alleges that Defendant Westpheling misrepresented the merits of various investments and pressured her into certain investments. It is also alleged that

Westpheling made investments without plaintiff's permission.

### B. Securities Arbitration Prior to *Dean Witter*

Prior to March of 1985, the law in the Fifth Circuit concerning arbitration of securities cases was settled and uniform. The Supreme Court had unequivocally stated that claims arising under the Securities Act of 1933 were inarbitrable. *Wilko v. Swan,* 346 U.S. 427, 438, 74 S.Ct. 182, 188–89, 98 L.Ed. 168 (1953). The Fifth Circuit had extended the reasoning of *Wilko v. Swan* to claims arising under the Securities Exchange Act of 1934. *Sibley v. Tandy,* 543 F.2d 540, 543 n.3 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977). The court in Sibley stated a "10b–5 claim [is] generally not subject to arbitration under a preexisting arbitration clause." *Id.* at 543. "[W]e adhere to the view that the similarities between the 1933 Securities Act and the 1934 Exchange Act far outweigh any differences which might exist, and that the widely held view that *Wilko* is applicable to both the 1933 and 1934 Acts is still correct." *Id.* at 543 n.3. This view was restated by the Fifth Circuit in subsequent cases. *See Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 720 F.2d 1446, 1448 (5th Cir.1983); *Sawyer v. Raymond James & Associates, Inc.,* 642 F.2d 791, 792 (5th Cir.1981).

The Fifth Circuit also espoused the "doctrine of intertwining." *See Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). The doctrine was stated by the Court in *Sibley:* "when it is impractical if not impossible to separate out non-arbitrable federal securities law claims from arbitrable contract claims, a court should deny arbitration in order to preserve its exclusive jurisdiction over the federal securities act claims." *Sibley,* 543 F.2d at 543. Therefore, if a case were made up of several claims and arbitrable claims were intertwined with inarbitrable claims, the court in this circuit would not permit any claims to be arbitrated, and would try the entire

case in federal court. *See Smoky Green-haw Cotton v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 720 F.2d 1446, 1448, 1451 (5th Cir.1983); *Sawyer v. Raymond, James & Associates, Inc.*, 642 F.2d 791, 793 (5th Cir.1981).

Under the law as it existed prior to *Dean Witter Reynolds*, therefore, it would have been likely that no part of the case now before this court could have been arbitrated.

### C. Securities Arbitration After *Dean Witter*

The Supreme Court reached two, dependent conclusions in *Dean Witter Reynolds*. The Court first addressed the principle question of whether to compel arbitration of pendent state-law claims when the federal court would assert jurisdiction over federal securities claims. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 1240, 84 L.Ed.2d 158 (1985). The Fifth Circuit, as stated above, would employ the doctrine of intertwining and might not permit arbitration of any claims. *Id.* The Court in *Dean Witter* specifically repudiated the doctrine of intertwining and held, "the Arbitration Act requires district courts to compel arbitration of pendent arbitrable claims when one of the parties files a motion to compel...." *Id.* at 1241. The Court, therefore, ordered the state-law claims to arbitration. *Id.* at 1244.

In the second part of the opinion, the Supreme Court held that a district court was not required to stay the arbitration proceedings pending the outcome of court proceedings. *Id.* at 1243. It had previously been customary to stay arbitration proceedings because of a perceived preclusive effect of arbitration on court proceedings. *See id.* at 1243 & n. 8; *but see Sibley*, 543 F.2d at 544 & n. 6 (staying the inarbitrable claims pending arbitration of contract claims where federal securities claims were dependent on the contract claims). The court stated, "arbitration proceedings will not necessarily have a preclusive effect on subsequent federal court proceedings." *Dean Witter*, 105 S.Ct. at 1243.

*Dean Witter Reynolds* only involved the question of whether state law claims should be arbitrated when the case at hand also contains inarbitrable federal securities claims. *Id.* at 1239–40 & n.1. The Court in *Dean Witter* did not seek to compel arbitration of any federal securities claim. *Id.* Although the Court was requested to determine the arbitrability of claims under the Securities Exchange Act of 1934, specifically Rule 10b–5, the Court declined to do so. *Id.* at 1240, n. 1. The arbitrability of claims arising under the Securities Exchange Act of 1934, therefore, remains unresolved by the Supreme Court.

### D. Defendants' Argument

Defendants focus their argument on the arbitrability of 1934 Act claims and maintain that the *Dean Witter Reynolds* opinion and concurrence are indicative of a "trend" favoring the arbitrability of claims under the 1934 Act. They direct this court to Justice White's concurring opinion which questions the applicability of *Wilko v. Swan* to the 1934 Act. Defendants also refer to an earlier Supreme Court case that contained a discussion of the 1934 Act and *Wilko v. Swan*. *See Scherk v. Alberto-Culver Co.* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The Court in *Scherk* makes a "colorable argument" that *Wilko v. Swan* does not apply to the 1934 Act. *Id.* at 513–14, 94 S.Ct. at 2454–55.

Defendants also argue that Fifth Circuit cases on securities arbitration such as *Sibley, Sawyer,* and *Smoky Greenhaw, supra,* have been repudiated by *Dean Witter Reynolds* because those cases relied on the intertwining doctrine. Defendants state that *Dean Witter Reynolds*, although not holding so itself, dictates that lower courts should compel arbitration of claims under the 1934 Act.

Defendants also ask this Court to consider another very recent Supreme Court opinion and two recent district court cases. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Hymel v. Delta Petroleum & Energy Corp., et al.,* No. SA–83–CA–362, slip op.

(W.D.Tex. June 19, 1985); *Coonly v. Rotan Mosle, Inc.,* 630 F.Supp. 404 (W.D.Tex. 1985). The Court in *Mitsubishi* reiterated the " 'liberal federal policy favoring arbitration agreements' " that " 'requires that we rigorously enforce agreements to arbitrate.' " *Mitsubishi,* — U.S. —, 105 S.Ct. at 3354–55 *quoting Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983) *and Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 1242–43, 84 L.Ed.2d 158 (1985).

*Hymel* is a Western District of Texas magistrate's opinion on a case that raises 1933 Act, 1934 Act, Texas Deceptive Trade Practices Act and common law claims. *Hymel* at 2. Defendant moved to compel arbitration based on an arbitration clause. *Id.* One of the issues considered was whether *Wilko v. Swan, supra,* applied to 1934 Act claims. *Id.* at 3. Following the discussion in *Scherk,* and Justice White's concurrence in *Dean Witter,* Magistrate O'Connor concluded that *Wilko* did not apply to 1934 Act claims, and those claims were therefore arbitrable. *Id.* at 17, 20.

*Coonly* is also a Western District of Texas case in which Judge Nowlin considers the arbitrability of claims under the 1934 Act. *Coonly,* at 406. Judge Nowlin states, "This Court believes that it would be proper to submit those claims to arbitration." *Id.* The Court reached this conclusion because it interpreted *Dean Witter Reynolds* as not only abolishing the doctrine of intertwining but also advocating the unhindered application of the Arbitration Act. *Id.* at 407.

### E. Discussion

#### 1. The State-law claims

■ The state-law claims, Counts III and IV of the complaint, are subject to arbitration. The Arbitration Act mandates that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This Court must rigorously enforce arbitration agreements absent a contrary policy in another federal statute, even if the result is piecemeal litigation. *Dean Witter Reynolds, Inc.* at 1243. Therefore, the state law claims must be severed from the federal action and arbitrated.

#### 2. The 1934 Act claim

■ The result defendants wish this court to reach is not supported by valid precedent. The Court in *Dean Witter Reynolds* expressly made no finding on the arbitrability of claims arising under section 10(b) and Rule 10b–5 of the 1934 Act because Dean Witter did not seek to compel arbitration of such claims in the district court. *Dean Witter Reynolds, Inc.* at 1240 n. 1. The court did note that *Wilko v. Swan* had "retained considerable vitality in the lower federal courts," and that many lower courts had held that claims arising under § 10(b) and Rule 10b–5 were inarbitrable. *Id.* (citing *Sibley v. Tandy Corp.,* 543 F.2d 540, 543 n. 3 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 98 L.Ed.2d 82 (1977)).

The Supreme Court in *Dean Witter Reynolds* did not repudiate all of *Sibley v. Tandy,* rather it only abrogated the doctrine of intertwining. *Dean Witter Reynolds, Inc.* at 1241. Therefore, a portion of *Sibley* survives *Dean Witter* and that portion includes the long-standing Fifth Circuit position on the inarbitrability of 1934 Act claims. As discussed above, the Court in *Dean Witter* recognized the law of the Fifth Circuit in its first explanatory footnote. *Id.* at 1240 n. 1. Therefore, the *Sibley v. Tandy* statement on the inarbitrability of 1934 Act claims remains the law of the Fifth Circuit.

Defendants also rely on Justice White's concurring opinion in *Dean Witter* where he expresses doubt that *Wilko v. Swan* is applicable to 1934 Act claims. *Dean Witter Reynolds, Inc.* at 1244 (White, J. concurring). However, Justice White prefaced his remarks there by stating that the Court was correct in its determination that the arbitrability of 1934 Act claims was *not* an issue before the Court. Therefore, his re-

marks are of no precedential and of little persuasive value for two reasons: first, because they are blantant dicta; and, second, because no other members of the Court joined in them. Therefore, these remarks have no bearing on the law as it stands in the Fifth Circuit.

Defendants also ask this Court to consider the statements made by the Supreme Court in *Scherk v. Alberto Culver*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The statements distinguish the 1933 and 1934 Act and are, as the Court admits, only a "colorable argument" made preliminary to the actual reasoning of the case that led to the holding. The primary issue in *Scherk* was the effect of an arbitration clause in an international contract, to which *Wilko* was simply inapplicable. *Scherk* at 517–18, 94 S.Ct. at 2456–57. The Court held that the arbitration clause in an international commercial transaction should be enforceable in view of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards adopted by the United Nations Economic and Social Council and subsequently implemented by Congress. Id. at 519–20 & n. 15, 94 S.Ct. at 2457 & n. 15. Once again, the Court's language on the applicability of *Wilko v. Swan* to 1934 Act claims was dictum and has no influence on the law of the Fifth circuit.

The recent Supreme Court case and two Western District cases that defendants urge similarly do not persuade this court. *See Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc.*, —— U.S. ——, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985); *Hymel v. Delta Petroleum & Energy Corp. et al.*, No. SA–83–CA–362, slip op. (W.D. Tex. June 19, 1985); *Coonly v. Rotan Mosle, Inc.*, 630 F.Supp. 404 (W.D.Tex.1985). *Mitsubishi* is factually and legally distinct from this case in that the claims involved there were under the antitrust laws. In addition, the language in *Mitsubishi* that defendants would have this court rely on is merely a restatement of the well known liberal federal policy toward the enforcement of arbitration agreements. *Id.* —— at ——, 105 S.Ct. at 3354–55 (citing *Dean Wit-*

*ter Reynolds*, 105 S.Ct. at 1242–43). Therefore, *Mitsubishi* makes no new contribution to the law relating to the arbitration of securities claims, and does not influence this court's decision.

The courts in *Hymel* and *Coonly* apparently have been persuaded by arguments similar to those made by the defendants in this case, and have based their decisions on dicta and ignored established Fifth Circuit precedent. Their conclusions, however, are not binding on this court, and for the reasons given above, are not persuasive either.

Until a majority of the Supreme Court expresses the sentiments of Justice White in *Dean Witter* or the five Justices in *Scherk* in the form of a holding, or the Fifth Circuit overrules its decisions in *Sibley, Sawyer* or *Smoky Greenhaw*, this court is compelled to follow what it believes to be the law of the Fifth Circuit after *Dean Witter* which is that 1934 claims are inarbitrable. Therefore, plaintiff's 10b–5 claim will remain in federal court along with the § 12(2) claim, and will proceed to trial.

### F. Motion was Timely

The final matter before this court in connection with defendants' motion is plaintiff's contention that the motion was untimely. The Court is of the opinion that defendants' motion was timely. Defendants filed their motion shortly after the Supreme Court decided *Dean Witter Reynolds* and abrogated the doctrine of intertwining. That doctrine would have prevented the arbitration of any claims because of the presence of the inarbitrable securities claims. The Court could not now require defendants to have filed a useless but timely motion to compel arbitration in order to not waive the right to urge arbitration in the event the doctrine of intertwining should be fortuitously abrogated before the case went to trial. *See Belke v. Merrill Lynch*, 693 F.2d 1023, 1027 (11th Cir.1982). Therefore, defendants' motion was timely.

### G. Conclusion

For the reasons stated above, defendants' Motion to Compel Arbitration is

GRANTED IN PART AND DENIED IN PART. Plaintiffs state law claims set forth in Counts III and IV of the complaint will be arbitrated in accordance with the arbitration clause, and such arbitration will not be stayed. Plaintiff's securities act claims set forth in Counts I and II of the complaint will remain in this Court and proceed to trial.