Guiseppina M.L. GIRARD, Plaintiff,

v.

DREXEL BURNHAM LAMBERT, INC., et al., Defendants.

Civ. A. No. H–84–2452.

United States District Court, S.D. Texas, Houston Division.

May 7, 1986.

Tom F. Coleman, Jr., Houston, Tex., for plaintiff.

Richard L. Josephson, Baker & Botts, Houston, Tex., for defendants.

## MEMORANDUM ON ARBITRATION

HUGHES, District Judge.

In this securities case, the defendants have moved to compel arbitration and to stay court action pending arbitration. Arbitration will be compelled of the state law claims, and arbitration will not be compelled of the RICO and 1934 Act claims. The statutory claims will be stayed.

Guiseppina M.L. Girard (Girard) opened an account with Drexel Burnham Lambert, Inc. (Drexel), to trade securities. She sustained losses, and she has alleged several causes of action to recover the money from

the defendants, including (a) Section 12(2) of the Securities Act of 1933 (1933 Act), 15 U.S.C. § 77$l$ (2), (b) Sections 10(b) and 15(c) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78$o$ (c) (1934 Act), (c) Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* (RICO), and (d) state law claims.

The defendants concede that Girard's claims under the Securities Act of 1933 are not arbitrable.

*The Agreement.*

The defendants invoke an agreement between Drexel and Girard that provided for settlement by arbitration of all controversies in connection with the stock transactions she was going to conduct through them.[1] Under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, they maintain that this court is required to compel arbitration of all claims (other than claims under the 1933 Act).

The court must conduct a two-step inquiry. First, the court must determine whether the parties' agreement to arbitrate encompasses the claims in question. Secondly, the court must consider whether legal constraints external to the parties' agreement foreclose the arbitration of those claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth,* —— U.S. ——, 105 S.Ct. 3346, 3355, 87 L.Ed.2d 444 (1985).

*Conduct Covered.*

■ On its face, the arbitration agreement encompasses all of the plaintiff's claims. The agreement unambigiously covers all questions between the parties generated by their dealings under the contract or in the account. All of Girard's complaints concern the defendants' handling of the securities transactions in the account initiated by the customer agreement.

*Unconscionability.*

■ Next, the court must consider whether constraints external to the parties' agreement foreclose arbitration. Girard

---

**1.** The Letter Agreement provides " ... Any controversy arising out of or relating to the account of the undersigned, to transactions with you for

the undersigned or to this agreement shall be settled by arbitration...."

resists arbitration on two grounds. First, she claims that the arbitration clause is unconscionable as part of an adhesion contract. That contention is one to be decided by the arbitrator because it concerns the formation of the contract as a whole rather than an issue of misrepresentation in the signing of the arbitration clause itself. *Merrill Lynch, Pierce, Fenner & Smith v. Haydu,* 637 F.2d 391, 398 (5th Cir.1981), citing *Prima Paint Corp. v. Flood & Conklin,* 388 U.S. 395, 406, 87 S.Ct. 1801, 1807, 18 L.Ed.2d 1270 (1967).

*Waiver.*

■ Secondly, Girard argues that the defendants have waived their right to compel arbitration through active participation in this litigation for one year. The party resisting arbitration bears a heavy burden of proof to establish waiver of arbitration. *Sibley v. Tandy Corp.,* 543 F.2d 540, 542 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977); *General Guaranty Ins. Co. v. New Orleans General Agency, Inc.,* 427 F.2d 924 (5th Cir. 1970). Because the doctrine of intertwining would have precluded arbitration, an earlier motion would have been futile. This motion, filed shortly after the Supreme Court's decision in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), is timely. *See Belke v. Merrill Lynch, Pierce, Fenner & Smith,* 693 F.2d 1023, 1027 (11th Cir.1982).

*Texas Law Questions.*

With respect to the pendent state law claims, the plaintiff has not asserted, nor does this court discern, any additional reasons those claims are not referable to arbitration under the agreement or at law. This court will order arbitration of them. *See Dean Witter Reynolds, Inc. v. Byrd,* 105 S.Ct. at 1238.

**2.** For purposes of this discussion, the court pretermits any analysis of the claims brought un-

*1934 Act Claims.*

■ Girard has lodged claims under Sections 10(b) and 15(c)[2] of the Securities Exchange Act of 1934. The Fifth Circuit has consistently held that claims brought under the Exchange Act are not arbitrable. *Smokey Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 720 F.2d 1446, 1448 (5th Cir.1983); *Sibley v. Tandy Corp.,* 543 F.2d at 543 n. 3. These cases apply the holding in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), to claims arising under the 1934 Act. Although the Supreme Court has questioned this extension of *Wilko, see Scherk v. Alberto Culver Co.,* 417 U.S. 506, 513–514, 94 S.Ct. 2449, 2454–2455, 41 L.Ed.2d 270 (1974); *see also Dean Witter Reynolds, Inc. v. Byrd,* 105 S.Ct. at 1244 (White, J. concurring), the cogent view is that "the similarities between the 1933 Securities Act and the 1934 Exchange Act far outweigh any differences which might exist." *Sibley v. Tandy,* 543 F.2d at 543, n. 3.

In *Wilko,* the Supreme Court resolved a conflict between the competing congressional policies manifested in two statutes. As the Supreme Court observed, the Federal Arbitration Act evidences the legislature's hospitable attitude toward arbitration. On the other hand, the Securities Act constitutes an attempt to establish and protect the rights of investors (in part by establishing special causes of action that include significant procedural rights) and to forbid waiver of those rights. *See* 15 U.S.C. § 77n. A predispute agreement to arbitrate claims constitutes a stipulation to waive a provision of the Securities Act. The provision, § 22(a), 15 U.S.C. § 77v(a), grants the federal and state courts concurrent jurisdiction and prohibits removal from state courts. If suit is brought in federal court, the plaintiff may avail himself of nationwide service of process and a wide choice of venue. The *Wilko* court concluded that the intention of Congress to protect investors is better served by re-

der 15 U.S.C. § 78*o* (c).

fusing to enforce predispute agreements to forfeit a judicial forum and concomitant procedural rights.

This court agrees with Justice White that the *Wilko* analysis cannot be mechanically applied to the 1934 Act, since counterpart provisions are imperfect or absent. *Dean Witter Reynolds, Inc. v. Byrd,* 105 S.Ct. at 1244 (White, J. concurring). This court concludes, however, that the application of *Wilko* to 1934 Act claims is consistent and reasonable.

In many respects, the 1934 Act serves as a supplement to the 1933 Act. The 1933 Act primarily concerns the original distributions of securities. The act adopts a full disclosure philosophy and requires registration of securities distributions. The Securities Exchange Act of 1934 primarily addresses post-distribution trading. The "static disclosure of the 1933 Act [is] ... transposed into a philosophy of continuous disclosure", Loss, Fundamentals of Securities Regulation, (1983) at 39, through the registration of securities traded on exchanges and the regulation of tender offers and proxy solicitation. *Id; see also, Scherk v. Alberto Culver Co.,* 417 U.S. at 527 n. 6, 94 S.Ct. at 2461 n. 6 (Douglas, J. dissenting).

... the 1934 Act from the beginning has had three other themes: regulation of the exchange and over-the-counter markets; prevention of fraud and market manipulation; and control of securities credit.... *Id.*

The 1933 Act and the 1934 Act "constitute interrelated components of the federal regulatory scheme governing transactions in securities." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 206, 96 S.Ct. 1375, 1387, 47 L.Ed.2d 668 (1976). While it is true that the causes of action asserted here are implied rather than express,[3] these implied causes of action serve to promote the goals of the federal regulatory scheme. Indeed, this private right of action "has been forged into a versatile, highly effective means of redress by private plaintiffs, who often follow and enlarge paths broken by the commission." Gadsby & Sommer, 11A Business Organizations § 5.01 (1985) at 5–2. These causes of action differ significantly from their common law counterparts. In *Herman & MacLean v. Huddleston,* 459 U.S. 375, 388–89, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983) the court observed:

the antifraud provisions of the securities laws [10(b) ] are not coextensive with common-law doctrines. Indeed, an important purpose of the federal securities statutes was to rectify perceived deficiencies in the available common-law protections by establishing higher standards of conduct in the securities industry.

The significant procedural advantages in the 1934 Act attend these implied causes of action. While jurisdiction under the 1934 Act is narrower than that in the 1933 Act, § 78aa provides the same wide choice of venue and nationwide service of process available to the 1933 Act claimant who pursues his remedy in a federal forum. Section 29(a), 15 U.S.C. § 78cc(a) (like its counterpart, Section 14 of the 1933 Act, 15 U.S.C. § 77n) voids a waiver of any provision of the 1934 Act. An arbitration agreement constitutes a stipulation which waives the right to a federal forum and attendant procedural opportunities.

The federal securities acts are significant, historical, pervasive regulations of an important component of the nation market for capital, which has had fifty years of legislative, administrative, and judicial development.

Whatever the advantages of the current infatuation with alternative dispute resolution methods, the judicial forum and the arbitral forum are not equal, and federal courts retain their usefulness, especially since they were specified by congress for this category of disputes. The right to a court is an integral part of this legislation, and as Justice Douglas noted in his dissent-

---

**3.** *See Ernst & Ernst v. Hochfelder,* 425 U.S. at 196, 96 S.Ct. at 1382. ("The existence of an [implied] private cause of action for violations of the statute [15 U.S.C. § 78j(b) ] and the Rule [10b–5] is now well-established.")

ing opinion in *Scherk v. Alberto Culver Co.*, 417 U.S. at 532, 94 S.Ct. at 2463, the "loss of the proper judicial forum carries with it the loss of substantial rights." The congressional policies in § 78aa and the securities regulatory scheme as a whole preclude arbitration of claims brought under the 1934 Act.

*RICO.*

Prior to the Supreme Court's decision in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 105 S.Ct. at 3346 somewhat of a consensus had emerged that RICO claims are not arbitrable. *See Witt v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 602 F.Supp. 867, 870 (W.D.Pa.1985); *Wilcox v. Ho-Wing Sit*, 586 F.Supp. 561, 567 (N.D.Ca.1984); *S.A. Mineracao da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. 566, 575 (S.D.N.Y.1983), *aff'd*, 745 F.2d 190 (2d Cir.1984); *compare Finn v. Davis*, 610 F.Supp. 1079, 1083 (S.D. Fla.1985). These decisions conclude that Congress did not intend to entrust to arbitrators the enforcement of laws that concern public-criminal law and vital national interests. *See S.A. Mineracao da Trindade-Samitri v. Utah International, Inc.*, 576 F.Supp. at 575.

Although *Mitsubishi Motors* has cast some doubt on the continued viability of these decisions, the Fifth Circuit has recently endorsed the view that RICO claims are not arbitrable. *Smoky Greenhaw Cotton Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 785 F.2d 1274 (5th Cir.1986). Further, as here, RICO claims are often predicated on violations of the securities laws. The reasoning evident in *Wilko* also militates against compelled arbitration. *Wilcox v. Ho-Wing Sit*, 586 F.Supp. at 561.

■ To compel arbitration of the RICO claims would require the arbitrators inferentially to decide the securities act questions, evading the congressional requirement of court proceedings and complicating, if not precluding, pure judicial processing of the predicate acts as independent claims.

*Stay.*

This court has the discretion to stay proceedings of non-arbitrable claims in the interest of judicial economy. *See Landis v. North American Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 165–66, 81 L.Ed. 153 (1936). The court concludes that the plaintiff's state claims predominate and that a stay pending resolution of these claims would better serve judicial efficiency than parallel proceedings.

### ORDER TO ARBITRATE AND TO STAY

1. Guiseppina M.L. Girard is ordered to submit her claims under state law to arbitration.

2. Proceedings here in the nonarbitrable claims are stayed until completion of arbitration or a further order.