Virginia Pope WOODYARD

v.

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC. and David I. Lapin.

Civ. A. No. H–85–5615.

United States District Court,
S.D. Texas,
Houston Division.

July 10, 1986.

Willis Witt, Houston, Tex., for plaintiff.

Kenneth E. Johns, Jr. and Guy S. Lipe, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

CARL O. BUE, JR., District Judge.

### I. *Introduction*

The matter pending before the Court in the above-referenced cause of action is Defendants' Motion to Compel Arbitration of Plaintiff's claims brought pursuant to the provisions of Section 10(b) of the Securities Exchange Act of 1934 ("the 1934 Act"), and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission ("the S.E.C.").

The Court's present inquiry focuses upon two distinct but related issues. In the first instance, this Court is asked to decide whether Plaintiff's 10(b) claims are arbitrable pursuant to the Federal Arbitration Act, 9 U.S.C. § 2 (1982),[1] as a matter of law and equity. Second, assuming that Plaintiff's claims are arbitrable, there is a factual dispute between the parties concerning whether Plaintiff has executed an enforceable arbitration agreement.

After a careful review of the entire record, the evidence adduced at a hearing held on May 16, 1986, and the memoranda of law submitted by the parties, this Court determines both issues favorably to the Plaintiff. Accordingly, Defendants' Motion

---

1. The Federal Arbitration Act provides in pertinent part as follows:

    **§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate**

    A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

    9 U.S.C. § 2.

to Compel Arbitration must be, and the same is, hereby DENIED.

## II. *Factual Background*

Plaintiff commenced the instant cause of action against Defendant, Merrill Lynch, Pierce, Fenner & Smith, Inc., a brokerage firm which acted as Plaintiff's stockbroker for the purchase and sale of securities, and against Defendant, David I. Lapin, Merrill Lynch's representative who managed Plaintiff's account. Following a loss of nearly one-third (⅓) of her invested capital in a brief time period, or approximately Seventy-Four Thousand Dollars ($74,000.00), Plaintiff filed suit contending that Defendants intentionally violated the 1934 Act by churning her account, and by making false statements and material omissions in rendering investment advice. A neophyte securities investor and grandmother approaching retirement age, Plaintiff further contends that Defendants blatantly disregarded her instructions to pursue a conservative investment strategy in order to generate commissions.

For several months the parties' business relationship made no provision for the arbitration of disputes. Thereafter, Plaintiff signed two purported contractual agreements which include pre-dispute arbitration clauses. The first of the two contractual documents, a Cash Management Account Agreement, was sent in the mail and executed by Plaintiff on July 6, 1983. Upon receiving this document, Plaintiff told Lapin that she did not understand it. She was informed that it was necessary for her to sign the agreement so that she could continue receiving payments from her investments. Moreover, Plaintiff was informed that the Cash Management Account operated like a bank account. The parties did not discuss the arbitration clause contained in the Cash Management Account Agreement,[2] and Plaintiff claims that she was unaware of the arbitration provisions prior to the filing of the instant lawsuit.

The second contractual document, a Standard Option Agreement, was executed by Plaintiff on September 27, 1983 in haste during Plaintiff's lunch hour. Plaintiff alleges that the option agreement seriously misrepresents her annual income and net worth, was signed in blank and subsequently erroneously completed by Lapin in contravention of her instructions. The Standard Option Agreement similarly contains a pre-dispute arbitration clause.[3]

---

**2.** Paragraph 11 of the Cash Management Account Agreement provides as follows:

> **11. Agreement to Arbitrate Controversies**
> It is agreed that any controversy between us arising out of your business or this agreement shall be submitted to arbitration conducted under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or pursuant to the Code of Arbitration Procedure of the National Association of Securities Dealers, Inc., as the undersigned may elect. If the controversy involves any security or commodity transaction or contract related thereto executed on an exchange located outside the United States, then such controversy shall, at the election of the undersigned, be submitted to arbitration conducted under the constitution of such exchange or under the provisions of the Constitution and Rules of the Board of Governors of the New York Stock Exchange, Inc. or the code of Arbitration Procedure of the National Association of Securities Dealers, Inc. Arbitration must be commenced by service upon the other of a written demand for arbitration or a written notice of intention to arbitrate,

therein electing the arbitration tribunal. In the event the undersigned does not make such designation within five (5) days of such demand or notice, then the undersigned authorizes you to do so on behalf of the undersigned.

**3.** Paragraph 9 of the Standard Option Agreement provides as follows:

> 9. Any controversy between us arising out of such option transactions or this agreement shall be settled by arbitration only before the National Association of Securities Dealers, Incorporated, or the New York Stock Exchange, or an Exchange located in the United States upon which listed options transactions are executed. I shall have the right of election as to which of the foregoing tribunals shall conduct the arbitration. Such election is to be by registered mail, addressed to Merrill Lynch's head office at 165 Broadway, New York, N.Y. 10080, attention of the Law Department. The notice of election is to be postmarked five days after the date of your demand to make such election. At the expiration of the five days, I hereby authorize Merrill Lynch to make such election on my behalf.

In reliance upon these two contractual documents, Defendants have moved this Court to compel the arbitration of Plaintiff's claims which arise under the 1934 Act.

### III. *The Arbitrability of Claims Arising Under The Securities Exchange Act of 1934*

■ Relying upon three interconnected statutory provisions of the Securities Act of 1933 ("the 1933 Act"),[4] including the anti-waiver provision of section 14, the Supreme Court in *Wilko v. Swan,* 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), held that pre-dispute arbitration agreements were unenforceable as applied to claims arising under the 1933 Act. Thus, *Wilko* and its progeny have consistently held that Congressional intent mandates that the special protection of the federal courts must be available for resolution of disputes arising under the federal securities law. Subsequent to *Wilko,* the lower federal courts uniformly decided that *Wilko's* rationale and holding under the 1933 Act should be extended to cases arising under the 1934 Act. *See, e.g., Sibley v. Tandy Corp.,* 543 F.2d 540 (5th Cir.1976), *cert. denied,* 434 U.S. 824, 98 S.Ct. 71, 54 L.Ed.2d 82 (1977).

Supreme Court pronouncements since *Wilko* have questioned the applicability of the *Wilko* rationale to claims arising under the 1934 Act. *See Scherk v. Alberto Culver Co.,* 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). Most recently, in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), while intimating that the question is ripe for decision, the Court expressly reserved the issue of the arbitrability of claims arising under section 10(b) of the 1934 Act. Nevertheless, in his brief concurring opinion, Justice White reiterated the reservations expressed by the Court in *Scherk,* and cautioned that *"Wilko's* reasoning cannot be mechanically transplanted to the 1934 Act." *Id.* 105 S.Ct. at 1244. (White, J., concurring).

In the wake of Justice White's concurring opinion in *Byrd,* and spurred ahead by the Court's evolving strong advocacy of arbitration, *see Mitsubishi Motors Corp. v. Solar Chrysler-Plymouth, Inc.,* — U.S. —, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985), and *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the lower federal courts have moved ahead where the Supreme Court has declined to tread. Thus, this district, like others, is facing confusing and divergent precedent on the issue of the arbitrability of claims arising under the 1934 Act.

The first appellate voice of caution was heard while the motion *sub judice* was pending. In *McMahon v. Shearson-American Express, Inc.,* 788 F.2d 94 [1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,550, at 93,286 (2d Cir. April 16, 1986), the Second Circuit reversed a decision of the District Court for the Southern District of New York which compelled the arbitration of claims arising under the 1934 Act. Citing Judge Friendly's opinion in *Colonial Realty v. Bache & Co.,* 358 F.2d 178, 183 n. 5 (2d Cir.), *cert. denied,* 385 U.S. 817, 87 S.Ct. 40, 17 L.Ed.2d 56 (1966), the Second Circuit concluded that "the non-waiver provision of § 14 of the 1933 Act has an almost identical counterpart in § 29(a) of the 1934 Act." *Id.* at 93,287. Relying upon the similarity of the non-waiver provisions of the 1933 and 1934 Acts, and consistent precedent in the Second Circuit, the court held that claims arising under Section 10(b) of the 1934 Act are not arbitrable, "noting

---

4. In his concurring opinion in *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985), Justice White concludes that the Court held arbitration agreements unenforceable with regard to claims under § 12(2) of the 1933 Act premised on "three interconnected statutory provisions: § 14 of the Act, which voids any 'stipulation ... binding any person acquiring any security to waive compliance with any provision' of the Act; § 12(2), which, the Court noted, creates 'a special right to recover for misrepresentation which differs substantially from the common-law action'; and § 22, which allows suit in any state or federal court of competent jurisdiction and provides for nationwide service of process." *Id.* 105 S.Ct. at 1244 (White, J., concurring) (citations omitted).

that the broad policy questions involved in securities law claims require a judicial forum for resolution of disputes." *Id.*

Defendants urge this Court to ignore *McMahon's* "glib reasoning," and argue that the Second Circuit's decision errs in that it frustrates the clear message of *Mitsubishi, Byrd,* and other cases documenting the Supreme Court's evolution into a strong advocate of arbitration. This Court recognizes the inherent tension between the policy goals of the arbitration act and those of investor protection which underlie federal securities law. Moreover, this Court is not entirely convinced that the *Wilko* rationale, as transplanted to the section 10(b) arena, can withstand the onslaught of the evolving federal recognition of arbitration as an effective, alternative dispute resolution mechanism. However, this Court is persuaded to heed the Second Circuit's admonition. It would be improvident to disregard clear judicial precedent based on mere speculation. The orderly administration of justice is best served if the courts in this district follow Supreme Court precedent, and adhere to the settled law of the Fifth Circuit. *See, id.* at 93,288.

In the final analysis, the conclusion that Defendants urge this Court to reach is unsupported by valid precedent. In *Byrd,* the Supreme Court unanimously abrogated the intertwining doctrine as applied to the arbitrability of pendent state law claims by the Fifth Circuit in *Sibley v. Tandy,* 543 F.2d at 542–43. However, the Court did not repudiate *Sibley* in its entirety. As indicated by the Court's explanatory note citing *Sibley,* the *Wilko* rationale has retained considerable vitality in the lower federal courts." *Dean Witter Reynolds, Inc. v. Byrd,* 105 S.Ct. at 1240 n. 1. Declining to reach the issue at bar, the Supreme Court neither expressly nor impliedly overruled *Sibley v. Tandy's* position

regarding the inarbitrability of Section 10(b) claims. *See id.*

Although Defendants cite scholarly opinions including contrary decisions in this district,[5] this Court is persuaded to follow the judicious opinion expressed in *Bustamante v. Rotan Mosle, Inc.,* 633 F.Supp. 303 (S.D.Tex.1986). In concluding that Section 10(b) claims are not presently arbitrable, Chief Judge Singleton stated, "Until a majority of the Supreme Court expresses the sentiments of Justice White in *Dean Witter* or the five Justices in *Scherk* in the form of a holding, or the Fifth Circuit overrules its decisions in *Sibley, Sawyer [v. Raymond, James & Assoc.,* 642 F.2d 791], or *Smoky Greenhaw [Cotton v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 642 F.2d 791,] this Court is compelled to follow what it believes to be the law of the Fifth Circuit after *Dean Witter* which is that 1934 claims are inarbitrable." *Id.* at 307. Concerning the issue before this Court, *Sibley v. Tandy,* 543 F.2d at 540, remains the law of the Fifth Circuit.

### IV. *The Issue as to Whether the Parties Agreed to Arbitrate*

The Court in *Mitsubishi,* 105 S.Ct. at 3346, set forth an analysis to be applied in determining whether statutory causes of action could be compelled to arbitration. The two steps of the *Mitsubishi* analytical framework are as follows:

(1) Determination of the existence of an arbitration agreement which covers the dispute in question; and

(2) Determination of whether any limitation contained in the statute or legislative history precludes arbitration of the statutory claim.

*See* 105 S.Ct. at 3353–54.

Thus, if the parties have entered an agreement to arbitrate and no precluding statutory provision exists,

---

5. For example, in *Beck v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* No. H–84–4475, —— F.Supp. —— (S.D.Tex. Jan. 13, 1986), Judge Black held that the plaintiff's claims arising under the 1934 Act should be compelled to arbitration. However, unlike the case before this

Court there was "no dispute as to the fact that Plaintiff executed a valid arbitration agreement." In light of the Second Circuit's recent opinion in *McMahon,* this Court has reconsidered and vacated prior orders compelling arbitration of section 10(b) claims.

... By agreeing to arbitrate a statutory claim a party does not forego the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality and expedition of arbitration. We must assume that if Congress intended the substantive protection afforded by a given statute to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history. *See Wilko v. Swan, supra.* Having made the bargain to arbitrate the parties should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.

105 S.Ct. at 3353–54.

■ For the purposes of this case, the significance of *Mitsubishi* is limited to the application of the test enunciated for determining whether it is possible to compel the arbitration of Plaintiff's statutory claims. Due to the unsettled state of the law, this Court initially considered the enforceability of pre-dispute arbitration agreements which purport to encompass claims arising under the 1934 Act and determined that Plaintiff's claims are not arbitrable at the present time. In most instances, such a determination would be dispositive. However, the possibility that intervening opinions in this controversial area might alter the applicable law and thus favor arbitrability leads this Court to address the alternative basis urged for decision in the instant case. Assuming that the Plaintiff's claims are legally arbitrable, the question then is whether the parties ever had an agreement to arbitrate.

Citing *Gateway Coal Co. v. United Mine Workers of America*, 414 U.S. 368, 94 S.Ct. 629, 38 L.Ed.2d 583 (1974), Plaintiff asserts that arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *See Id.* 414 U.S. at 374–75, 94 S.Ct. at 635. Defendants cite *Moses H. Cone*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765, in support of the same proposition, arguing that the Arbitration Act as a whole, and particularly section 2 of the Act, is at bottom a policy guaranteeing the enforcement of private contractual arrangements. The Arbitration Act simply created, the Supreme Court concluded, "a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate." *Id.* 460 U.S. at 24, 103 S.Ct. at 941. Plaintiff even cites *Mitsubishi*, a case heavily relied upon by Defendants, for the cautionary statement which follows:

Of course, courts should remain attuned to well supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds for the revocation of any contract.

105 S.Ct. at 3354.

At this juncture, the parties' positions diverge. Citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967), and recent Fifth Circuit opinions, *see, e.g., Black Gold Marine, Inc. v. Jackson Marine, Inc.*, 759 F.2d 466 (5th Cir.1985), Plaintiff urges this Court to find that there has been fraud in the inducement of the arbitration clause sufficient to vitiate any contractual obligation to arbitrate. Alternatively, Plaintiff argues that the arbitration agreements should not be enforced because they are adhesion contracts which resulted from a great disparity in the parties' bargaining strength.

Defendants, on the other hand, contend that Plaintiff has failed to state a claim based upon fraudulent inducement of contract, because there has been no affirmative act of deceit committed by the Defendants. *See Boyd v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 614 F.Supp. 940 (S.D.Fla.1985). Armed with an impressive array of authorities, Defendants further argue that standardized contracts between a brokerage house and its customers, though admittedly contracts of adhesion, are nevertheless enforceable, unless they

are unconscionable. In particular, Defendants rely upon *Weinhoff v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, C.A. No. 82–1374A (N.D.Ga.1982) [Available on WESTLAW, DCTU database], which upheld the identical arbitration clause contained in the Cash Management Account Agreement at issue in the instant case. Based upon its conclusion that the Cash Management Account Agreement did not appear to be unreasonable, the district court determined that the arbitration clause was not unconscionable, notwithstanding *Weinhoff's* argument that the adhesion contract was unenforceable. *See id.*

There are several reasons why the Defendants' arguments are deficient. Initially, this Court takes notice of a rule promulgated by the S.E.C. which sets forth the Commission's position regarding the use of pre-dispute arbitration agreements in contracts entered into between brokers and their public customers. *See* 17 C.F.R. § 240.15C2–2(a). Recognizing that the inclusion of such agreements in standardized contracts represented clear overreaching and a misrepresentation of the customer's legal rights, the Commission's rule "codified its longstanding view that such clauses are inconsistent with the deceptive practice prohibitions of section 10(b) ..." 48 Fed. Reg. 53404 (codified at 17 C.F.R. § 240.-15C2–2(a)). Thus, the S.E.C.'s conclusion is that the brokers' insertion of pre-dispute arbitration provisions into customer agreements constitutes a fraudulent, manipulative or deceptive act or practice.

Rule 15C2–2(a) imposed an affirmative obligation upon brokers to discontinue the practice of including pre-dispute arbitration clauses in customer agreements and a duty to disclose to existing customers, who had previously signed such agreements, that they were not bound to arbitration.[6] Since it is undisputed that Rule 15C2–2(a) did not become effective until after the execution of the two contractual documents by Plaintiff, Defendants contend that the arbitration provisions at issue are not covered by the Rule. *See Zerman v. Jacobs*, 751 F.2d 82, 84 (2d Cir.1984); *Boyd v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 614 F.Supp. 940, 942 n. 2 (S.D.Fla.1985).

Even if Rule 15C2–2(a) were applicable to the contracts in question, Defendants further contend that the rule would not forbid the arbitration of Plaintiff's otherwise arbitrable federal securities claims because it has been repeatedly held that Rule 15C2–2(a) is merely a procedural mechanism for informing securities customers of their rights under existing law. Rule 15C2–2(a)

---

**6.** Rule 15c2–2(a), which became effective on December 28, 1983 provides in pertinent part as follows:

(b) Notwithstanding paragraph (a) of this section, until December 31, 1984 a broker or dealer may use existing supplies of customer agreement forms if all such agreements entered into with public customers after December 28, 1983 are accompanied by the separate written disclosure:

Although you have signed a customer agreement form with FIRM NAME that states that you are required to arbitrate any future dispute or controversy that may arise between us, you are not required to arbitrate any dispute or controversy that arises under the federal securities laws but instead can resolve any such dispute or controversy through litigation in the courts.

(c) a Broker or dealer shall not be in violation of paragraph (a) of this section with respect to any agreement entered into with a public customer prior to December 28, 1983 if:

(1) Any such public customer for whom the broker or dealer has after July 1, 1983 (i) carried a free credit balance, or (ii) held securities for safekeeping or as collateral, or (iii) effected a securities transaction is sent, no later than December 31, 1984, the disclosure prescribed in paragraph (b) of this section; or (2) Any other public customer is sent upon the completion of his next transaction pursuant to such agreement, the disclosure prescribed in paragraph (b) of this section.

17 C.F.R. § 240.15C2–2(a).

Although Defendants contend that this rule is inapplicable to the contracts at issue, subsection (c) clearly imposes an affirmative obligation upon brokers and dealers to take corrective action regarding deceptive pre-dispute arbitration agreements which have been previously entered pursuant to standardized brokerage contracts. Moreover, it is immaterial, in this instance, whether Rule 15C2–2(a) governs the contracts at issue because this Court adopts the S.E.C.'s underlying rationale, which is grounded in the broad remedial theme of the 1934 Act.

does not create a substantive right to a judicial forum. *See, e.g., Finkle & Ross v. A.G. Paribas, Inc.,* 622 F.Supp. 1505 (S.D. N.Y.1985), *Shotto v. Laub,* 632 F.Supp. 516, 522 (D.Md.1986); *Erlbaum v. Prudential-Bache Securities, Inc.,* No. 84–5541, *slip op.* at 4 (E.D.Pa. Aug. 9, 1985). [Available on WESTLAW, DCTU database.] Consequently, in reliance upon *Finkle, Shotto,* and *Erlbaum,* Defendants argue that the purpose of Rule 15C2–2(a) was not to alter existing law or to override federal law which delimits the scope of arbitration. *See Finkle & Ross,* 622 F.Supp. at 1510 ("It does not create nor does it preserve rights to litigate in federal courts").

The parties in this case did not discuss the arbitration provisions in question. Nevertheless, Defendants argue that the agreements should be enforced because no affirmative act of deceit has been committed. Defendants' argument, however, runs counter to the thrust of Rule 15C2–2(a). While Defendants' position regarding the substantive-procedural aspects of the rule is unquestionably correct, they miss the mark by failing to come to grips with the Commission's spirit and purpose in promulgating the rule. It is intentionally misleading for brokers and dealers, who possess full knowledge that many potential claims are inarbitrable, to purport to bind to arbitration *all* disputes which might arise between the parties to a standardized contract. The enforcement of an inherently misleading arbitration provision ignores the broad prohibitions in the 1934 Act against deceptive and manipulative practices. Moreover, the enforcement of such provisions against unsophisticated and unsuspecting public customers ignores the Supreme Court's teaching that courts should remain alert to instances of intentional overreaching. *See Mitsubishi,* 105 S.Ct. at 3354.

While this Court is fully aware that arbitration is an important means for the resolution of disputes which provides an efficient procedure and is often an economic alternative to litigation, a valid contract to arbitrate must be knowingly entered into

and premised upon an investor's intentional waiver of the right of access to a judicial forum. Thus, even if incursions are made into the *Wilko* rationale, and causes of action arising under the 1934 Act are ultimately arbitrable, it does not follow that pre-dispute agreements between brokers and their public customers should be automatically enforced.

The instant case presents a classic example of an unsophisticated investor who has sought, received, and relied upon the superior knowledge of a securities advisor. Upon entering a relationship of trust, it is understandable that the customer's adversarial instincts would be lulled. Thus, equitable principles leave little space for the subsequent operation of the doctrine of *caveat emptor.* At the very least, pre-dispute arbitration agreements between brokers and their public customers should remain subject to meaningful judicial inquiry. There is a potential for conflicts of interest when an investor's marketplace intermediary, upon entering a fiduciary relationship, has one unilateral, adversarial eye cocked upon possible litigation between the parties to a standardized brokerage contract.

This Court has been instructed to order arbitration to proceed only if it is satisfied that "the making of the agreement for arbitration ... is not in issue." *Prima Paint Corp.,* 388 U.S. at 403, 87 S.Ct. at 1805. However, Plaintiff has advanced the claim that the arbitration clauses should not be enforced because they were entered into between parties of grossly unequal bargaining strength and that she, in fact, did not knowingly surrender her right to have this case determined in a judicial forum. Secondly, Plaintiff has advanced the claim that the arbitration clauses should not be enforced because they were fraudulently induced. Defendants' responsive arguments ignore the plain teaching of *Prima Paint,* and conflict with Rule 15C2–2(a) and the S.E.C.'s underlying rationale. Finally, in applying the admonition of the Supreme Court in *Mitsubishi,* after inquiring into the issues which go to the "making" of the agreement to arbitrate, this

Court further concludes that an enforceable, binding contractual agreement to arbitrate has not been entered into by Plaintiff.

### V. *Conclusion*

This Court determines that Plaintiff's claims which arise under the 1934 Act are not presently arbitrable pursuant to the Federal Arbitration Act. However, even if pre-dispute arbitration agreements are ultimately held to be enforceable, Plaintiff's obvious lack of familiarity with the mechanisms available for the resolution of securities disputes would continue to be of fundamental concern. Based upon the factual circumstances of the instant case, this Court concludes that Plaintiff did not intentionally enter a contract to arbitrate disputes or knowingly waive her right to a judicial forum. Accordingly, Defendants' Motion to Compel Arbitration must be DENIED.

It is so ORDERED.